IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-04-1488 |
| | § | |
| TPI STAFFING, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

<u>ORDER</u>

Pending before the Court is Defendant TPI Staffing, Inc.'s Motion for Summary Judgment (Document No. 38). Having considered the motion, submissions, and applicable law, the Court determines that the motion should be granted.

I.  B<small>ACKGROUND</small>

Plaintiff George Thomas ("Thomas") brings the instant action alleging race discrimination stemming from his employment relationship with Defendant TPI Staffing, Inc. ("TPI"). TPI is a staffing company based in Houston, Texas, specializing in placement of temporary and permanent information technology, administrative, accounting, professional, and technical employees. On August 15, 2001, TPI hired Thomas to assemble computers as a pre-test technician at Foxconn/Q-Edge Corporation

("Q-Edge"), a computer-assembly company in Houston, Texas.[1]  At Q-Edge, Thomas reported directly to TPI's on-site supervisor, Courtney Traweek ("Traweek") but received job-specific direction from Q-Edge employees John Lee and David Lie.[2]

On June 24, 2002, TPI assigned Thomas to a new position where he was the only employee responsible for repairing cosmetic problems on assembled computers. On August 5, 2002, Q-Edge added two employees to the cosmetic repairs group, and Thomas was promoted to cosmetic group lead where he trained and supervised the two employees.  On September 16, 2002, Maria Rojas ("Rojas"), an employee of Crown Staffing, began working under Thomas in the cosmetic repairs group.  The following day, Rojas contacted Traweek and alleged Thomas touched her inappropriately throughout the previous day.  After discussing the sexual harassment claim with both Rojas and Thomas, Traweek fired Thomas on September 17, 2002.

On September 27, 2002, Thomas sent a letter to TPI in which he denied all allegations of sexual harassment and alleged his employment had been terminated because of TPI's discriminatory practices against employees of Indian origin.  After receiving a letter from TPI denying his reinstatement, Thomas filed a complaint with

---

[1] TPI acted as the primary staffing agency for Q-Edge during Thomas's employment. Crown Staffing, another staffing agency, filled the staffing demands TPI could not meet.

[2] Traweek's responsibilities included interviewing, hiring, and firing all of TPI's employees working at Q-Edge.

the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR") on July 15, 2003. On January 12, 2004, the EEOC dismissed Thomas's discrimination charge with a "no cause" determination. On January 15, 2004, Thomas received a letter from the TCHR informing him of his right to file a civil action under the Texas Commission on Human Rights Act ("TCHRA"). On April 15, 2004, Thomas filed a complaint in this Court, *pro se*, alleging TPI terminated him for discriminatory reasons, and TPI employees subjected him to racial discrimination which created a hostile work environment.

TPI filed its motion for summary judgment on April 21, 2005, seeking dismissal of Thomas's claims in their entirety and arguing that Thomas's claims fail as a matter of law. Thomas responds in various motions, restating his claims of discrimination and arguing no proof exists indicating he sexually harassed Rojas. Thomas ostensibly contends TPI's reason for termination, sexual harassment, is pretextual. Thomas further alleges TPI employees subjected him to a hostile work environment by frequently reprimanding him for working too many overtime hours, screaming at him, and subjecting him to various racist comments.

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there

3

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The movant bears the initial burden of showing the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a motion for summary judgment is properly made, the non-movant must establish facts showing the existence of a genuine issue for trial. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). The non-movant raises a genuine issue if he sets forth specific facts in support of allegations essential to his claims. *Celotex*, 477 U.S. at 327. The evidence presented must be more than "merely colorable," such that a reasonable jury could return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Unsubstantiated, conclusory allegations will not prevent an award of summary judgment. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). The court construes the evidence in the light most favorable to the non-movant to determine if there is an issue raised for trial. *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). If a non-movant fails to raise a genuine issue, rendering all other facts immaterial, the movant is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

### III. LAW AND ANALYSIS

Although Thomas fails to identify the statutes under which he brings his

4

discrimination claims, he appears to allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (2000) ("Title VII"), 42 U.S.C. § 1981 (2000), and TEX. LAB. CODE ANN. §§ 21.051 and 21.055 (Vernon's 1998) ("TCHRA"), which all prohibit race discrimination in employment. Accordingly, the Court will analyze Thomas's claims of race discrimination and hostile work environment under these statutes.[3]

Under Title VII, employers are prohibited from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual . . . because of such individual's race, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Absent direct evidence of discrimination, courts employ the modified *McDonnell Douglas* burden-shifting scheme when analyzing a Title VII claim. *See Rachid v. Jack In The Box*, 376 F.3d 305, 312 (5th Cir. 2004).[4] In both race discrimination and hostile work environment claims, the plaintiff must establish a *prima facie* case by a preponderance of the evidence. *Shackelford*, 190 F.3d at 404. A presumption of discrimination is raised by the establishment of a *prima facie* case. *See Texas Dept. of C'mty Affairs v. Burdine*,

---

[3] Discrimination claims are analyzed in the same manner under Title VII, § 1981, and the TCHRA. *See Shackelford v. Deloitte & Touche*, 190 F.3d 398, 404 n.2 (5th Cir. 1991). Thus, for the purposes of this order, the Court will analyze Thomas's Title VII, § 1981, and TCHRA claims simultaneously.

[4] The burden-shifting analysis is used for both race discrimination and hostile work environment claims under Title VII, § 1981, and the TCHRA. *See Shackelford*, 190 F.3d at 404.

450 U.S. 248, 253 (1981). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Rachid*, 376 F.3d at 312. The defendant's burden is a burden of production only, such that the defendant's articulation of a nondiscriminatory reason for its employment decision shifts the burden back to the plaintiff. *Burdine,* 450 U.S. at 253. The plaintiff must then establish a genuine issue of material fact that either (1) the defendant's reason is not true but is actually a pretext for discrimination; or (2) the defendant's reason is true but is only one reason for the adverse employment action, and another "motivating factor" is the plaintiff's protected characteristic. *Rachid*, 376 F.3d at 312. The Court will address Thomas's race discrimination and hostile work environment claims in turn.

A. RACE DISCRIMINATION

1. *Prima Facie Case*

To establish a *prima facie* case for race discrimination, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) he was either replaced by someone outside the protected class or similarly situated employees outside his protected class were treated more favorably. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

6

802 (1973)).[5]

Here, TPI stipulates that Thomas is a member of a protected class, was qualified for his job, and was subject to an adverse employment action. Therefore, Thomas establishes the first three elements of a *prima facie* case for a Title VII discrimination claim. *See Ward*, 102 F.3d at 202. However, Thomas offers no evidence that someone outside of his protected class replaced him after his termination. In fact, TPI did not place anyone in the cosmetic group at Q-Edge after Thomas's termination. Nevertheless, Thomas may still establish a *prima facie* case for discrimination by demonstrating a disparity in the way TPI treated him compared to similarly situated, non-Indian employees assigned to work at Q-Edge. *See Okoye v. Tex. Houston Health Science Ctr.*, 245 F.2d 507, 512-13 (5th Cir. 2001). Accordingly, to establish a *prima facie* case, Thomas must establish TPI treated non-Indian employees in nearly identical circumstances preferentially. *See Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).

Thomas attempts to establish a *prima facie* case for race discrimination by offering his own testimony that TPI discriminated against him. Primarily, Thomas alleges other TPI employees violated the company's sexual harassment policy, and TPI

---

[5] The elements of a *prima facie* case for race discrimination are the same for Title VII, § 1981, and TCHRA violations. *See Shackelford*, 190 F.3d at 404.

7

did not terminate the employees for such violations. However, none of the evidence suggests any of the employees Thomas alleges violated the sexual harassment policy ever formally had complaints of sexual harassment lodged against them. Therefore, Thomas fails to establish that the non-Indian employees were similarly situated. In the end, Thomas produces only bare accusations to substantiate his claim of disparate treatment. Thus, Thomas cannot establish a *prima facie* case of discrimination because he fails to establish the fourth element requiring a showing that Thomas was either replaced by a person outside of his protected class or that he was treated less favorably than similarly situated employees. *See Okoye*, 245 F.2d at 512-13.

2. *Non-Discriminatory Reason for Termination*

Assuming, *arguendo*, that Thomas can establish a *prima facie* case of race discrimination, the burden shifts to TPI to provide a legitimate, non-discriminatory reason for terminating Thomas. *See Rachid*, 376 F.3d at 312. TPI alleges it terminated Thomas for inappropriately touching Maria Rojas and asking her to go out for coffee, thereby violating TPI's policy prohibiting sexual harassment. Thomas does not dispute his termination immediately followed Rojas's complaint of sexual harassment. Therefore, TPI satisfies its burden of production by stating a legitimate, non-discriminatory reason for Thomas's termination. *Burdine*, 450 U.S. at 253.3.

3. *Pretext*

Because TPI articulates a non-discriminatory reason for Thomas's termination, Thomas must establish a genuine issue of material fact by demonstrating either that a discriminatory reason actually motivated his termination or that TPI's explanation is unworthy of credence. *McDonnell Douglas*, 411 U.S. at 804-05. Thomas asserts TPI has no proof he engaged in conduct that violated TPI's sexual harassment policy. However, this case does not turn on whether Thomas actually violated TPI's sexual harassment policy. Rather, the issue is whether TPI believed Rojas' allegation in good faith and based its decision to terminate Thomas on that belief. *See Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1165 (5th Cir. 1993). Proving the "falseness" of Rojas's claim in itself is irrelevant to proving TPI discriminated against Thomas, unless Thomas can establish that TPI did not believe Rojas and only used her complaint as a pretext for his termination. *Id.* at 1165-66.[6]

Thomas claims TPI brought false sexual harassment allegations against him as part of a conspiracy to terminate him for discriminatory reasons. However, Thomas offers no evidence beyond mere accusations to establish that his termination for sexual

---

[6] Thomas's claims are similar to those of the plaintiff in *Waggoner*, who was terminated after complaints that he had sexually harassed a female co-worker. *Waggoner*, 987 F.2d at 1162. The *Waggoner* plaintiff brought an age discrimination suit against his employer, alleging the sexual harassment claim was untrue and had been part of a conspiracy to fire the plaintiff because of his age. *Id.* at 1163. However, the United States Court of Appeals for the Fifth Circuit determined the plaintiff's assertions of innocence on the sexual harassment claims were insufficient to raise a genuine issue of material fact because the allegations were nothing more than mere speculation. *Id.* at 1164-66.

harassment was pretextual or that race was a motivating factor in his termination. "[I]t is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996). Therefore, Thomas cannot demonstrate that his termination for sexual harassment is pretextual because Thomas fails to produce evidence raising a genuine issue of material fact that race played any role in his termination. Accordingly, the Court grants summary judgment on Thomas's claims asserting race discrimination in violation of Title VII, § 1981, and the TCHRA.[7]

B. THOMAS'S HOSTILE WORK ENVIRONMENT CLAIMS

1. *Prima Facie Case*

Thomas also appears to assert a claim for hostile work environment. In order to establish a *prima facie* case for a hostile work environment claim, an employee must show:

> (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of

---

[7] Because the *prima facie* case for race discrimination is the same under Title VII, § 1981, and the TCHRA, failure to establish a *prima facie* case under Title VII analysis is fatal to Thomas's race discrimination claims under all three statutes. *See Shackelford*, 190 F.3d at 404.

was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353(5th Cir. 2001).  In order for the harassment complained of to affect a term, condition, or privilege of employment under the fourth element of the *prima facie* case, the harassment must be "sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509-10 (5th Cir. 1999).  Additionally, a court considers the frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating instead of a "mere utterance," and whether the conduct interfered unreasonably with an employee's work performance.  *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir. 2000).

In furtherance of his hostile work environment claim, Thomas alleges Traweek screamed at him and complained about Thomas's overtime hours.  Additionally, Thomas alleges TPI employees called him "Bin Ladin" and "terrorist," which he reported to Traweek who took no action to resolve the problem.  Upon analysis, however, the Court determines that Thomas fails to establish a *prima facie* case for a hostile work environment based on any of these allegations.  First, Thomas fails to

11

offer any evidence beyond conclusory allegations to establish that the screaming and overtime issues were racially motivated. Even assuming Thomas's allegations of Traweek's screaming at him and monitoring his overtime hours are true, these two allegations will not sustain a hostile work environment claim absent further evidence to establish the actions were racially motivated.

Next, Thomas's allegation of racially motivated name-calling is unsupported by evidence creating a genuine issue of material fact. Thomas fails to name any of the parties who allegedly called him "Bin Ladin" or "terrorist" and offers no evidence indicating he reported such harassment to Traweek. Accordingly, Thomas's evidence of alleged name-calling cannot establish a genuine issue of material fact and subsequently does not establish a hostile work environment claim. Therefore, the Court grants summary judgment on Thomas's hostile work environment claim. Given the foregoing, the Court hereby

ORDERS that Defendant TPI Staffing, Inc.'s Motion for Summary Judgment (Document No. 38) is granted.

SIGNED at Houston, Texas, on this 29th day of June, 2005.

_____

DAVID HITTNER

United States District Judge